IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN B. TURNER,<br><br>    Petitioner,<br><br>  vs.<br><br>MATTHEW CATE, et al.,<br><br>    Respondent.<br>_____ / | No. C 11-4948 YGR (PR)<br><br>**ORDER GRANTING RESPONDENT'S MOTION TO DISMISS PETITION AS UNTIMELY; DENYING CERTIFICATE OF APPEALABILITY; AND TERMINATING REMAINING PENDING MOTIONS AS MOOT**<br><br>(Docket Nos. 9, 10, 13, 14, 24) |

## INTRODUCTION

Petitioner Stephen B. Turner, a California parolee, filed a *pro se* action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Pet."). Before the Court is Respondent's motion to dismiss ("MTD") the instant petition as untimely under 28 U.S.C. § 2244(d) -- the statute of limitations set by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). In the alternative, Respondent argues that the petition should be dismissed because it fails to state a federal question.

Having considered all of the papers filed by the parties, the Court GRANTS Respondent's motion to dismiss the petition as untimely.

## BACKGROUND

In 1984, Petitioner pleaded nolo contendere to misdemeanor indecent exposure. (Pet. at 4.) He was not required to register as a sex offender. (*Id.*) In 1986, he was discharged from probation upon request, and the state court dismissed the conviction. (*Id.*)

In 1993, Petitioner was convicted of misdemeanor indecent exposure and was fined and sentenced to thirty days work release and a three-year term of probation. (*Id.*) In 1996, after his probation was complete, the 1993 conviction was expunged. (*Id.*)

In 2006, Petitioner pleaded guilty to five non-sex related felony charges. (*Id.*) He was sentenced to a term of seven years and eight months in state prison. (*Id.*) He was also subsequently required to register as a sex offender. (*Id.* at 4-5.)

Effective November 8, 2006, California enacted "Jessica's Law." Jessica's Law prohibits registered sex offenders from residing within 2000 feet of a public or private school or park where

children regularly gather. Cal. Penal Code § 3003.5(b). The California legislature also enacted Penal Code § 290.007 which imposes mandatory registration on sex offenders. (Pet. at 12.)

On January 5, 2010, Petitioner was released from Avenal State Prison. (*Id*.) Upon his release, Petitioner complied with the sex offender registration requirement. (*Id*.) However, as explained below, Petitioner's parole was eventually revoked a total of four times for failure to comply with the Jessica's Law residency restriction. (*Id*. at 5.)

On January 11, 2010, Petitioner filed a state habeas petition in the Alameda County Superior Court challenging the Jessica's Law residency restriction. (MTD, Ex. 5.) On May 27, 2010, the state superior court denied the petition. (MTD, Ex. 7.)

On February 23, 2011, Petitioner filed state habeas petition in the California Court of Appeal challenging both the Jessica's Law residency restriction and the registration requirement for sex offenders. (MTD, Ex. 3.) On May 4, 2011, the state appellate court denied the petition. (MTD, Ex. 8.)

On August 16, 2011, Petitioner filed a state habeas petition in the California Supreme Court. (MTD, Ex. 9.) On August 31, 2011, the state supreme court denied his petition. (MTD, Ex. 10.)

On October 6, 2011, Petitioner filed the instant petition. (Docket No. 1.)

On February 10, 2012, Respondent filed his motion to dismiss the petition as untimely and for failing to state a federal question. (Docket No. 14.)

On February 21, 2012, Petitioner filed his opposition ("Opp'n"). (Docket No. 16.) On March 7, 2012, Respondent filed his reply to the opposition. (Docket No. 19.)

## **DISCUSSION**

AEDPA, which became law on April 24, 1996, imposed a statute of limitations on petitions for a writ of habeas corpus filed by state prisoners. Petitions filed by prisoners challenging non-capital state convictions or sentences must be filed within one year of the latest date on which: (A) the judgment became final after the conclusion of direct review or the time passed for seeking direct review; (B) an impediment to filing an application created by unconstitutional state action was removed, if such action prevented petitioner from filing; (C) the constitutional right asserted was

recognized by the Supreme Court, if the right was newly recognized by the Supreme Court and made retroactive to cases on collateral review; or (D) the factual predicate of the claim could have been discovered through the exercise of due diligence. *See* 28 U.S.C. § 2244(d)(1).

Section 2244's one-year limitations period applies to all habeas petitions filed by persons in "custody pursuant to the judgment of a State court," even if the petition challenges a pertinent administrative decision rather than a state court judgment. *See Shelby v. Bartlett*, 391 F.3d 1061, 1063 (9th Cir. 2004). The custody requirement does not require that a prisoner be physically confined. *Maleng v. Cook*, 490 U.S. 488, 491 (1989). A petitioner who is on parole at the time of filing is considered to be in custody, *see Jones v. Cunningham*, 371 U.S. 236, 241-43 (1963); *Gordon v. Duran*, 895 F.2d 610, 612 (9th Cir. 1990), as is a petitioner on probation, *see Chaker v. Crogan*, 428 F.3d 1215, 1219 (9th Cir. 2005); *cf. United States v. Span*, 75 F.3d 1383 n.5 (9th Cir. 1996) (probation establishes custody for purposes of 28 U.S.C. § 2255).

Petitioner argues that § 2244(d)(1)(A) is the applicable standard for the resolution of his claims. (Opp'n at 5). As such, he argues that the limitations period began to run ninety days after the California Supreme Court's denial of his state habeas petition. (*Id*. at 6.) Petitioner erroneously relies on case law dealing with habeas petitions challenging the civil commitment of sexually violent predators to support this assertion. (*See id.* (citing *Martin v. Bartow*, 621 F. Supp. 2d 666, 667 (W.D. Wis. 2009) *rev'd*, 628 F.3d 871 (7th Cir. 2010) (holding that petitioner's habeas petition challenging initial civil commitment was time barred).) This case law is irrelevant to Petitioner's claims. Additionally, Petitioner relies on the case law dealing with habeas petitions challenging initial convictions to support his assertion that § 2244(d)(1)(A) applies to his claims. (Opp'n at 6.) Again, this case law is irrelevant to Petitioner's claims because he is challenging the conditions of his parole and not his actual conviction. (*Id*.)

For prisoners challenging the denial of parole, § 2244(d)(1)(D) applies. *Redd v. McGrath*, 343 F.3d 1077, 1079 (9th Cir. 2003). In *Redd*, the Ninth Circuit Court of Appeals held that the factual predicate of a parole denial becomes discoverable when the decision becomes final. 343 F.3d at 1079. Therefore, the Court finds that § 2244(d)(1)(D) also applies when prisoners -- like

3

Petitioner -- challenge conditions of parole. Pursuant to § 2244(d)(1)(D), the limitations period begins to run when the factual predicate of the claim could have been discovered through the exercise of due diligence.

The one-year period is calculated according to the general rule for counting time in federal courts, Rule 6(a) of the Federal Rules of Civil Procedure. *Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001). That is, "the day of the act, event, or default from which the designated period of time begins to run shall not be included" in the one-year limitations period. Fed. R. Civ. P. 6(a). This is referred to as the "anniversary method" because, absent any tolling, the expiration date of the limitations period will be the same date as the triggering event in the following year. *Patterson*, 251 F.3d at 1246.

In the present case, Petitioner is a California parolee and is therefore in custody for the purposes of AEDPA. (Pet. at 6.) As mentioned above, because he is challenging his conditions of parole, the limitations period under AEDPA began to run when the factual predicate of his claims could have been discovered through due diligence pursuant to § 2244(d)(1)(D).

Petitioner was released from prison on January 5, 2010. (Reply at 3.) Respondent contends that the limitations period on Petitioner's registration requirement claim began to run one day later on January 6, 2010. (*Id.* at 4.) However, Petitioner alleges that the limitations period on his registration requirement claim began to run on the date that he first registered after being released from prison. (Opp'n at 5.) Petitioner alleges that he registered within one week of being released from prison, i.e., seven days after January 5, 2010 -- January 12, 2010. (*Id.*) The Court will use the latest date, January 12, 2010, as the date that the factual predicate of Petitioner's registration requirement claim arose. Thus, the limitations period on Petitioner's registration requirement claim began to run one day later on January 13, 2010. Therefore, Petitioner was required to file a federal habeas corpus petition no later than January 13, 2011 with respect to his registration requirement claim. *See* 28 U.S.C. § 2244(d).

Meanwhile, Petitioner was first given notice of the Jessica's Law residency restriction on January 6, 2010, which is the date that the factual predicate of this claim arose. (MTD, Ex. 6.) The

4

limitations period on Petitioner's residency restriction claim began to run one day later on January 7, 2010. Therefore, Petitioner was required to file a federal habeas corpus petition no later than January 7, 2011 with respect to his residency restriction claim.

Here, Petitioner filed the instant federal habeas corpus petition on October 6, 2011 -- nine months after the limitations period had expired for both claims. The petition is therefore untimely unless Petitioner can show that he is entitled to tolling.

## I. Statutory Tolling

A petition may nonetheless be timely if the limitations period was tolled under 28 U.S.C. § 2244(d)(2) for a substantial period of time. AEDPA's one-year limitations period is tolled under § 2244(d)(2) for the "'time during which a properly filed application for State post-conviction or other collateral review [with respect to the pertinent judgment or claim] is pending.'" *Dictado v. Ducharme*, 244 F.3d 724, 726 (9th Cir. 2001) (quoting 28 U.S.C. § 2244 (d)(2)), *abrogated on other grounds by Pace v. DiGuglielmo,* 544 U.S. 408 (2005). The limitations period is also tolled during the time between a lower state court's decision and the filing of a notice of appeal to a higher state court. *Carey v. Saffold*, 536 U.S. 214, 223 (2002). In California, where prisoners generally use the State's original writ system, this means that the limitations period remains tolled during the intervals between a state court's disposition of an original state habeas petition and the filing of the next original state habeas petition in a higher court, provided the prisoner did not delay unreasonably in seeking review in the higher court. *Id.* at 220-25.

### A. Registration Requirement for Sex Offenders

As mentioned above, on February 23, 2011, Petitioner filed a state habeas petition in the California Court of Appeal challenging the registration requirement for sex offenders for the first time -- after the January 13, 2011 expiration of the limitations period. A state habeas petition filed *before* AEDPA's statute of limitations begins to run tolls the limitations period. *Jiminez v. Rice,* 276 F.3d 478, 482 (9th Cir. 2001). However, an application for state post-conviction or other collateral review filed *after* AEDPA's statute of limitations has ended cannot toll the limitations period. *See Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) (§ 2244(d) does not permit the reinitiation

5

of the limitations period that has ended before the state petition was filed, even if the state petition was timely filed). Section 2244(d)(2) cannot "revive" the limitations period once it has run (i.e., restart the clock to zero); it can only serve to pause a clock that has not yet fully run. *See Rashid v. Khulmann*, 991 F. Supp. 254, 259 (S.D.N.Y. 1998) (once the limitations period has expired, collateral petitions can no longer serve to avoid the statute of limitations). Therefore, Petitioner is not entitled to statutory tolling for his registration requirement claim because the limitations period had already expired when he filed his state appellate court petition.

Accordingly, because Petitioner is not entitled to statutory tolling, his registration requirement claim is barred as untimely unless he can show that he is entitled to equitable tolling.

### B.Jessica's Law Residency Restriction

Petitioner was first given notice of the Jessica's Law residency restriction on January 6, 2010. Thus, the limitations period on Petitioner's Jessica's Law residency restriction claim began to run on January 7, 2010. Petitioner filed his state habeas petition in superior court on January 11, 2010, four days later. Pursuant to *Carey*, Petitioner is entitled to statutory tolling of the limitations period for the entire time that he was pursuing state collateral relief.

The limitations period resumed running on September 1, 2011, the day after the California Supreme Court denied Petitioner's state habeas petition, and ran until October 6, 2011, the date his federal petition was filed, which is thirty-six days. A total of forty days (36 days plus 4 days) had elapsed before Petitioner filed his federal petition. Therefore, *if* Petitioner is entitled to tolling for the full round of collateral review, then his federal petition was filed 325 days (365 days minus 40 days) before the 365-day limitations period expired.

Respondent argues that the entire period should not be tolled because Petitioner himself "unreasonably delayed" that state court proceedings. (MTD at 4.) Specifically, Respondent asserts that the 272-day gap (between the state superior court's ruling and Petitioner's subsequent filing of a petition in the state appellate court) as well as the 104-day gap (between the state appellate court's ruling and Petitioner's subsequent filing of a petition in the state supreme court) constituted periods of "unreasonable delay." (*Id*.)

6

A determination of unreasonable delay is particularly difficult to make in California: "The fact that California's timeliness standard is general rather than precise may make it more difficult for federal courts to determine just when a review application . . . comes too late." *Carey*, 536 U.S. at 223. However, the Supreme Court has held that California's appellate system could be treated similarly to those in other states, which measure delays "in terms of a determinate time period, such as 30 or 60 days." *Evans v. Chavis*, 546 U.S. 189, 192 (2006). In other words, "California's 'reasonable time' standard [should] not lead to filing delays substantially longer than those in States with determinate timeliness rules." *Id*. at 200 (citing *Carey*, 536 U.S. at 222-23). Based on the Supreme Court's reference to the usual thirty or sixty day periods provided by states with determinate deadlines, a delay of sixty days would likely be reasonable. *Cf. Noble v. Adams*, 676 F.3d 1180, 1184 (9th Cir. Apr. 19, 2012) (remanding to district court to determine whether delay of four and a half months between filing petitions in the state superior and state appellate courts was within a reasonable time under California law such that petitioner would be entitled to gap tolling and noting that the California Court of Appeal has excused delays of several months where petitioner offers adequate reasons for delay). On the other hand, the Ninth Circuit has determined in *Noble* that a delay of four-and-a-half months or longer would likely be unreasonable unless the petitioner is able to offer an adequate reason for the delay under California law. *Id*.

In the present case, the delays of 272 days and 104 days to seek higher court review are not within the "reasonable" delay time frame of thirty to sixty days in *Evans*. Applying *Evans*, other California federal district courts, including this Court, have held that delays of equal duration to and delays shorter than those in the present case were unreasonable. *See Culver v. Director of Corrections*, 450 F. Supp. 2d 1135, 1140-41 (C.D. Cal. 2006) (97-day and 71-day delays "unreasonable"); *Dorthick v. Hamlet*, 2007 WL 1430041, at *3 (N.D. Cal. 2007) (97-day and 174-day delays were unreasonable). The present case is distinguishable from *Noble* because Petitioner has not alleged an adequate reason for the delay in filing under California law. In *Noble*, the Ninth Circuit noted that the California Court of Appeal has excused delays of several months where an attorney failed to handle a petitioner's appeal after agreeing to do so or where the attorney handling

7

the petition was inexperienced with respect to the petitioner's claims. 674 F.3d at 1184. Here, Petitioner argues that he was delayed in filing his state habeas petitions because of limited law library access. (Opp'n at 7.) However, limited library access has not been found to be an adequate reason for delay under California law. *See Whalem/Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir. 2000) (en banc) (finding lack of access to AEDPA materials in the prison law library a possible basis for equitable tolling). Instead, it has been used as basis for granting equitable tolling in limited circumstances. *Id.* The Court considers this argument below. On this basis though, the Court finds that the 272-day and 104-day time frames that Petitioner waited before seeking higher court review are not tolled.

In summary, although Petitioner is entitled to statutory tolling for the time periods that he was pursuing collateral review in state court, he is not entitled to statutory tolling for the 272-day gap between the state superior court's ruling and the filing of his state appellate court petition. Nor is he entitled to statutory tolling during the 104-day gap between the state appellate court's ruling and the filing of his state supreme court petition. In addition to the gaps, and as set forth above, Petitioner waited four days before pursuing collateral relief in the state superior court, and thirty-six days before filing the instant federal petition after completing one full round of collateral review. When combined a total of 416 days (272 days plus 104 days plus 4 days plus 36 days) elapsed before Petitioner filed his federal habeas petition on October 6, 2011, thereby exceeding the 365-day limitations period under AEDPA. Thus, statutory tolling is not a sufficient basis to overcome the untimeliness bar as to Petitioner's Jessica's Law residency restriction claim.

Because statutory tolling is insufficient to overcome the bar, Petitioner's Jessica's Law residency restriction claim is untimely unless he can show that he is entitled to equitable tolling.

## II. **Equitable Tolling**

The Supreme Court has determined that AEDPA's statute of limitations is subject to equitable tolling in appropriate cases. *Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010). "When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate." *Miles v. Prunty*, 187 F.3d

8

1104, 1107 (9th Cir. 1999). Equitable tolling will not be available in most cases because extensions of time should be granted only if "extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time." *Calderon v. United States District Court (Beeler)*, 128 F.3d 1283, 1288 (9th Cir. 1997), *overruled in part on other grounds by Calderon v. United States District Court (Kelly)*, 163 F.3d 530 (9th Cir. 1998) (en banc). Another statement of the standard is that a litigant seeking equitable tolling bears the burden of establishing two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way," preventing timely filing. *Holland*, 130 S. Ct. at 2562 (quoting *Pace*, 544 U.S. at 418); *accord Rasberry v. Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2006).

The Ninth Circuit has said that the petitioner "bears the burden of showing that this extraordinary exclusion should apply to him." *Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002). Indeed, "'the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule.'" *Id.* at 1066 (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000)).

However, "[r]ather than let procedural uncertainties unreasonably snuff out a constitutional claim, the issue of when grave difficulty merges literally into 'impossibility' should be resolved in [a petitioner's] favor." *Lott v. Mueller*, 304 F.3d 918, 920 (9th Cir. 2002). When a prisoner is proceeding *pro se*, his allegations regarding diligence in filing a federal petition on time must be construed liberally. *Roy v. Lampert*, 465 F.3d 964, 970 (9th Cir. 2006).

Where a prisoner fails to show any causal connection between the grounds upon which he asserts a right to equitable tolling and his inability to file a timely federal habeas petition, the equitable tolling claim will be denied. *Gaston v. Palmer*, 417 F.3d 1030, 1034-35 (9th Cir. 2005), *amended*, 447 F.3d 1165 (9th Cir. 2006). He must, furthermore, show that his untimeliness was caused by an external impediment and not by his own lack of diligence. *Bryant v. Arizona Attorney Gen.*, 499 F.3d 1056, 1061 (9th Cir. 2007).

Here, Petitioner argues that he is entitled to equitable tolling due to extraordinary circumstances beyond his control, on the grounds that he was incarcerated for two periods in 2010

9

and 2011 -- almost the entire time frame during which he was pursuing collateral relief in the California Court of Appeal and in the California Supreme Court -- and that he was denied meaningful access to the law library during those periods. (Opp'n at 8.) Specifically, Petitioner states:

> Between May 27, 2010 and February 23, 2011, [he] was incarcerated for all but approx. 5 weeks at Santa Rita County Jail in Dublin, California and San Quentin State Prison in San Quentin, California. At the Santa Rita Jail there is NO law library. At San Quentin State Prison, [he] was deprived of any meaningful access to the law despite numerous requests to access the prison's law library. Between May 4, 2011 and August 16, 2011, Turner was incarcerated for all but approx. 3 weeks. During his period of incarceration, he had NO access to a law library.

(*Id.* at 7-8.)

The record shows that, on May 27, 2010, Petitioner was incarcerated in Santa Rita Jail as a result of a parole revocation.[1] (Opp'n at 7-8.) On June 2, 2010, he was transferred to San Quentin State Prison ("SQSP"). (Reply at note 3, Exs. 11, 12.) On August 19, 2010, he was returned to parole. (*Id.*) On September 8, 2010, he was arrested again and returned to Santa Rita Jail. (*Id.*) On October 13, 2010, he was transferred to SQSP and then to Avenal State Prison on January 5, 2011. (*Id.*) On January 23, 2011, Petitioner was returned to parole. (*Id.*) On February 11, 2011, he was arrested for the third time and returned to Santa Rita Jail. (*Id.*) On April 12, 2011, he was returned to parole. (*Id.*) Finally, on April 27, 2011, he was arrested and returned to Santa Rita Jail. (*Id.*) On May 23, 2011, he was transferred to SQSP. (*Id.*) On July 26, 2011, he was returned to parole. (*Id.*)

Petitioner has submitted one document in support of his claim of equitable tolling based on his lack of law library access. Attached to his opposition is "Exhibit A," a 602 inmate appeal form that Petitioner submitted on July 23, 2011 -- three days before he was returned to parole for the last time. (Opp'n, Ex. A.) The 602 appeal indicates that Petitioner made a request for "immediate law library access during the next available session" while he was incarcerated at SQSP. (*Id.*) Petitioner ultimately withdrew his request for law library access due to his impending release on parole. (*Id.*)

---

[1] It is unclear from the record if the subsequent three arrests were also due to parole revocation; however, the Court notes that Petitioner claims he was arrested for parole revocation a total of "four times." (Pet. at 5.)

10

A claim of limited access to the law library does not automatically entitle a petitioner to equitable tolling, particularly where he cannot show that he needed access to the law library to prepare and file his federal habeas petition on time. *Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir. 2001) (lack of access to library materials does not automatically qualify as grounds for equitable tolling; rather, the inquiry must be "fact-specific"). Furthermore, the United States Supreme Court in *Lewis v. Casey* held that alleging insufficient law library access is not enough:

> [T]he inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

518 U.S. 343, 351 (1996).

Here, Petitioner has not shown a causal connection between his lack of law library access and his failure to file a timely federal habeas petition. Although Petitioner alleges that his lack of law library access during the periods of time that he was incarcerated contributed to his untimely filing, he fails allege with specificity that he needed such access to prepare his petition on time. *Id*. He fails to point to a specific claim that he did not pursue or technical requirement that he failed to realize as a result of his lack of law library access. *Id*. In spite of the fact that he claims that he had limited law library access during these periods of time, he was able to both research and raise his registration requirement claim when he filed his state appellate court petition on February 23, 2011. (MTD, Ex. 3.) Therefore, as explained below, it is conceivable that Petitioner either did not need law library access to raise his registration requirement claim or that he had sufficient law library access during the periods of time that he was not incarcerated to research the claim.

The Court notes that Petitioner was not incarcerated prior to May 27, 2010. Therefore, he had law library access from January 13, 2010 (the date the limitations period began to run as to the registration requirement claim) until May 27, 2010 (134 days). Petitioner filed his state superior court petition during this time. Furthermore, as part of his claim for equitable tolling, Petitioner only

11

alleges that he did not have access to the law library while he was at Santa Rita Jail and SQSP. The Court assumes that he had access to the law library at Avenal State Prison and while he was out on parole. Thus, Petitioner had law library access during the following time frames: (1) August 19, 2010 through September 8, 2010 (20 days); (2) January 5, 2011 through February 11, 2011 (37 days); and (3) April 12, 2011 through April 27, 2011 (15 days). Including the initial 134-day period, Petitioner had access to the law library for a total of 206 days (134 days plus 20 days plus 37 days plus 15 days). Again, the Court finds Petitioner's general claim that he was without law library access during his incarceration lacking in detail. Petitioner does not specifically allege that he needed law library access to raise his claims and that he was unable to raise these claims because of a lack of law library access during the periods of time that he was incarcerated. *Lewis*, 518 U.S. at 351. Instead, he states only generally that he needed law library access to file his state habeas petitions in the California Court of Appeal and California Supreme Court on time. (Opp'n at 7-8.) In order to be eligible for equitable tolling, however, Petitioner must allege when he was denied access to the law library, the reasons for the denial, or how this lack of access limited his ability to file a *timely federal habeas petition*. As explained above, Petitioner had adequate access to the law library totaling 206 days, or almost seven months during the time periods prior to his incarceration, while he was incarcerated at Avenal State Prison, and while he was out on parole. With almost seven months of access to the law library, it is conceivable that Petitioner did not need law library access during the alleged periods he was incarcerated. In fact, on February 23, 2011 -- while incarcerated at Santa Rita Jail (where he alleges he had no library access) -- Petitioner was able to file his state appellate court petition. The Court concludes that Petitioner fails to show that his inadequate access to the law library prevented him from filing a *timely federal habeas petition* in the instant case. Therefore, Petitioner fails to show the existence of any extraordinary circumstance beyond his control that prevented him from filing a timely federal habeas petition, and he is not entitled to equitable tolling.

Moreover, Petitioner fails to show that he was diligent in seeking law library access during the periods of time that he was incarcerated. Petitioner supports his equitable tolling claim by

12

submitting one exhibit -- a 602 appeal that was filed almost two months after he was transferred to SQSP and three days before he was released on parole. (Opp'n, Ex. A; Reply at 6.) In fact, he ultimately withdrew the appeal because of his impending release on parole. (*Id.*) The fact that he waited almost two months before filing this 602 appeal suggests that Petitioner was not diligent in seeking the law library access. Additionally, the fact that Petitioner withdrew his appeal before his release on parole further suggests that he did not need law library access. While Petitioner claims that during the first time period he was incarcerated, he submitted "numerous requests" to access the SQSP's law library, he fails to substantiate these alleged "numerous requests" in any manner. Therefore, the Court finds that Petitioner has failed to show that his untimeliness was caused by a lack of law library access. Instead, it was his own lack of diligence that led to the untimely filing of his federal petition as well. *Bryant*, 499 F.3d at 1061.

In sum, Petitioner's federal habeas petition is untimely, and he has not offered the Court a sufficient reason why he should be entitled to equitable tolling. Accordingly, the Court GRANTS Respondent's motion to dismiss the petition as untimely. Because the Court finds that the petition is untimely, it need not address Respondent's alternative argument that the petition fails to state a federal question.

### III.     Certificate of Appealability

The federal rules governing habeas cases brought by state prisoners have been amended to require a district court that dismisses or denies a habeas petition to grant or deny a certificate of appealability ("COA") in its ruling. *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009).

For the reasons stated above, Petitioner has not shown "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, a COA is DENIED as to all claims.

### CONCLUSION

For the reasons outlined above, the Court orders as follows:

1.     Respondent's motion to dismiss the petition as untimely (Docket No. 14) is

GRANTED, and this action is DISMISSED with prejudice.

    2.     A COA is DENIED as to all claims.

    3.     Matthew Cate, the current Secretary of the California Department of Corrections and Rehabilitation, has been substituted as Respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

    4.     The Clerk of the Court shall enter judgment, terminate all pending motions as moot (Docket Nos. 9, 10, 13, 24), and close the file.

    5.     This Order terminates Docket Nos. 9, 10, 13, 14, and 24.

IT IS SO ORDERED.

DATED:   September 5, 2012

**Y**VONNE **G**ONZALEZ **R**OGERS
**U**NITED **S**TATES **D**ISTRICT **C**OURT **J**UDGE